# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                                                                     CR No. 16-3076 JCH

OSCAR MORENO CORONADO,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Oscar Moreno-Coronado's Motion to Dismiss the Indictment for Violation of *Brady v. Maryland* (ECF No. 144). Defendant argues that the Government disclosed records containing material, exculpatory information on the Friday before a Monday trial, resulting in a violation of Defendant's due process right to a fair trial. Defendant requests dismissal of the indictment as the only appropriate remedy. Defendant also requested an evidentiary hearing, if the Court would not dismiss on the briefs. This Court held a hearing on the motion on January 14, 2019. The Court, having considered the motion, briefs, evidence, arguments made at the hearing, applicable law, and otherwise being fully advised, concludes that Defendant's motion to dismiss the indictment should be denied. The Court, however, will continue the trial initially scheduled for January 14, 2019, until Tuesday, January 22, 2019, to remedy the belated disclosure and allow defense counsel more time to prepare for trial in light of the newly disclosed evidence.

    **I.**        **BACKGROUND**

The relevant facts of this case are set forth in the Court's Memorandum Opinion and Order (ECF No. 78) and the Court adopts them herein.

On July 19, 2016, the Court entered its Discovery Order, which included an order that the Government disclose to Defendant material for which disclosure is mandated by *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and the Jencks Act, 18 U.S.C. § 3500, "by the time required by the applicable law." Order 6, ECF No. 21. On December 23, 2018, Defendant sent the Government a supplemental request for discovery that included the "phone dump" of Talamantes's phone. Gov.'s Resp. ¶ 6, ECF No. 147. Following the holiday, and after fixing technical issues with the Government's file sharing software, on January 7, 2019, Defendant received a reproduction of all previously discovered material as well as newly discovered material. *See id.* ¶¶ 8-12. The Government, however, erroneously had not included the requested phone dump of Talamantes's phone, but rather reproduced the phone dump for Defendant's phone. *See id.* ¶¶ 13-14. On January 11, 2019, the Government disclosed the Talamantes "phone dump" records at 11:02 a.m. *Id.* ¶ 15.

The telephone records indicate that on June 28, 2016, between 3:04 p.m. and 3:06:07 p.m. MT[1], Talamantes told the undercover officer that he would call his guy, he was in a hurry to leave, "But let's get this done…." Def.'s Ex. A, ECF No. 144-1 at 2 of 3. The immediately following message is an incoming text message to Talamantes from someone listed as "Koala." *Id.* At 3:06:35 p.m. MST, Koala tells Talamantes in Spanish, "NO t desesperes ya yegue ya viene el d el garage stave w0rking." *Id.* At 3:08:36, Talamantes sends an outgoing text to the undercover officer, "Yeah he just texted me .. He's here just at a garage party." *Id.* Talamantes texts Koala at 3:08:51, "Ta Bueno." *Id.* At 3:09:05 p.m. Talamantes texts Koala, "Estoi al lado de donde te dije,"

---

[1] Exhibit A shows times in "GMT." The Court takes judicial notice that GMT, or Greenwich Mean Time is seven hours ahead of mountain time ("MT"), the time zone in which Albuquerque is located.

or as Defendant asserts is the correct translation, "I am next to where I told you." *Id.* & Def.'s Mot. 2, ECF No. 144. There are four additional text messages between "Koala" and Talamantes:

1. Outgoing to Koala at 3:09:25 p.m.     En el carrio k me avias visto en..

2. Outgoing to Koala at 3:09:39 p.m.     Tu andas en la bonita

3. Incoming from Koala at 3:45:56        U Trust ur guy

4. Outgoing to Koala at 3:46:26          Si wey ya e halado con ellos

Def.'s Ex. A, ECF No. 144-1 at 2 of 3.

The number corresponding to "Koala" is not the phone number for the phone that agents took from Defendant at the time of his arrest. The Government admits that the "phone dump" of "Moreno-Coronado's phone did not include calls or text messages with the phone number associated with Talamantes" and the phone dump of Talamantes's phone included texts and calls with an individual identified in the phone as "Koala." Gov.'s Resp. 2, ECF No. 147. Defendant argues that the records contain material, exculpatory information in the form of drug related contacts between Talamantes and "Koala" on the day of the incident in question, showing that someone else supplied the drugs to Talamantes. Def.'s Mot. to Dismiss at 1-2, ECF No. 144.

Defendant asserts: "This late disclosure has essentially denied Mr. Moreno the right to Due process and to make use of exculpatory evidence. The Government's belated disclosure has severely prejudiced Mr. Moreno thereby depriving him of a fair trial." *Id.* at 2-3. Defendant further explained the late disclosure prevented him from preparing cross examination of Government witnesses about their failure to pursue other lines of investigation, from obtaining via subpoena the phone numbers and records for Koala and Talamantes to show their contacts and the lack of contact with Defendant, and from fully preparing to use the data in cross examination of the agents. *Id.* at 9. Defendant asserts the only proper remedy is dismissal of the indictment. *Id.* at 10.

In its response brief, the Government argues the material is not *Brady* because the Government's information showed "Koala" is really Defendant Moreno Coronado. The Government filed as an attachment a DART Request on the phone number (915)288-7435. *See* DART Request, ECF No. 147-3. The Government contends in its response and argued at the hearing that a confidential source informed a DEA agent previously that Oscar Moreno using the "Koala" telephone number was looking to hire him to transport drugs from El Paso to an unknown destination. *See id.*; Jan. 14, 2019 Hr'g Tr. 25:7-17. The Government thus argues that the information in its possession is that Defendant is Koala, and thus, the disclosed text message evidence between Talamantes and Koala is not exculpatory. Alternatively, the Government contends that, even if the material were *Brady*, the proper remedy is a continuance, not dismissal of the indictment. Gov.'s Resp. 5, ECF No. 147.

After receiving the Government's response late January 11, 2019, the Court vacated the jury trial scheduled for Monday for the purpose of conducting the hearing on Defendant's motion. At the January 14, 2019 hearing, the Government asserted that Defendant has had a copy of the phone extraction information from the phone seized from Defendant since 2016, and those documents show no contacts with Talamantes's phone number, but numerous contacts with the number in Talamantes's phone assigned to "Koala." The Government additionally proffered exhibits A-E, which the Government asserts are four images that were forwarded from "Koala's" phone to Defendant's phone. Because the images are of a personal nature, the Government argues that Government's Hearing Exhibits A-E indicate that Koala is Defendant Moreno-Coronado.

## II. LEGAL ANALYSIS

In *Brady v. Maryland*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material

4

either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. To establish a *Brady* violation, "a defendant must demonstrate that '(1) the prosecutor suppressed evidence; (2) the evidence was favorable to the defendant as exculpatory or impeachment evidence; and (3) the evidence was material.'" *United States v. Walters*, 269 F.3d 1207, 1209 (10th Cir. 2001) (quoting *Gonzales v. McKune*, 247 F.3d 1066, 1075 (10th Cir. 2001)). Evidence is "material" under *Brady* "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Burke*, 571 F.3d 1048, 1053 (10th Cir. 2009) (quoting *United States v. Young*, 45 F.3d 1405, 1408 (10th Cir.1995)). Impeachment evidence also falls within the *Brady* rule. *United States v. Gonzalez-Montoya*, 161 F.3d 643, 649 (10th Cir. 1998).

Although the typical *Brady* inquiry occurs when a defendant receives favorable evidence after trial, the Tenth Circuit has expressed that there is a limitation on disclosure delay where necessary to protect *Brady* principles. *See Burke*, 571 F.3d at 1053. "It would eviscerate the purpose of the *Brady* rule and encourage gamesmanship were we to allow the government to postpone disclosures to the last minute, during trial." *Id.* at 1054. As the *Burke* Court explained:

> It is not hard to imagine the many circumstances in which the belated revelation of *Brady* material might meaningfully alter a defendant's choices before and during trial: how to apportion time and resources to various theories when investigating the case, whether the defendant should testify, whether to focus the jury's attention on this or that defense, and so on. To force the defendant to bear these costs without recourse would offend the notion of fair trial that underlies the *Brady* principle.
>
> At a minimum, therefore, we adopt as a holding this court's statement in *Young* that the belated disclosure of impeachment or exculpatory information favorable to the accused violates due process when an "earlier disclosure would have created a reasonable doubt of guilt."…Where the district court concludes that the government was dilatory in its compliance with *Brady*, to the prejudice of the defendant, the district court has discretion to determine an appropriate remedy, whether it be exclusion of the witness, limitations on the scope of permitted testimony, instructions to the jury, or even mistrial. The choice of remedy is in the sound discretion of the district court. Fed.R.Crim.P. 16(d)(2) authorizes the district

5

> court in cases of non-compliance with discovery obligations to "permit the discovery or inspection," "grant a continuance," "prohibit the party from introducing the evidence not disclosed," or "enter any other order that is just under the circumstances."

*Id.* (internal footnote omitted). The Tenth Circuit further explained:

> The majority of our sister circuits have held that while the untimely disclosure of *Brady* material does not constitute a constitutional violation in itself, it may violate due process if the defendant can show he was prejudiced by the delay….
>
> As these decisions recognize, not every delay in disclosure of *Brady* material is necessarily prejudicial to the defense. *See United States v. Warren*, 454 F.3d 752, 760 (7th Cir.2006) ("Late disclosure does not itself constitute a *Brady* violation."). As the Eleventh Circuit said in *United States v. Kubiak*, 704 F.2d 1545, 1550 (11th Cir.1983), the focus of due process violation is "not upon the fact of nondisclosure, but upon the impact of nondisclosure on the jury's verdict." To justify imposition of a remedy, the defense must articulate to the district court the reasons why the delay should be regarded as materially prejudicial.

*Id.* at 1055-56.

Turning to the *Brady* factors, the Government admits having Talamantes's phone records in its possession since 2016, and that it only attempted to provide them to defense counsel upon her specific request for his phone records in late December 2018. Although the Government proffered evidence linking Koala to Defendant, the Court does not have on the record before it sufficient evidence establishing Defendant as Koala to eviscerate the potential usefulness of the information to Defendant at trial to try to establish that Koala is a third party. The evidence of Talamantes's texts to Koala combined with the fact that a phone connected to Koala's phone number was not found with Defendant is evidence helpful to the defense to try to cast doubt on the Government's theory and to use for impeachment. Based on the record before it, the Court finds that Defendant may be able to use the evidence to his advantage to cast doubt on the Government's proof at trial, and thus it is favorable to him. The Court recognizes that the Government has other inculpatory evidence in the case it intends to present at trial, including surveillance evidence of a

bag transfer between Defendant and Talamantes, the seizure of a bag with methamphetamine, and unrecorded admissions by Defendant to agents. Nevertheless, favorable evidence should be disclosed to the defendant in time to present to the jury so that the jury can determine how to weigh the strength of the Government's case in light of that evidence. For all these reasons, the Government should have more liberally construed its discovery obligations and considered the evidence favorable and subject to its disclosure obligations under *Brady* and *Giglio*.

As to whether the Government suppressed the evidence, the Government ultimately disclosed the material prior to trial, albeit on the eve of trial. The Government acknowledged at the hearing that its disclosure was later than optimal. Defendant in his brief set forth the grounds for how counsel would use the material and would need more time to prepare his defense for effective cross examination of witnesses and the presentation of evidence. Defendant is not seeking a continuance and asserts that a week will not do him any good. The Court, however, finds that an eight-day continuance of trial in this matter will redress any prejudice caused by the last-minute disclosure and will provide defense counsel time to effectively review the evidence and prepare for cross examination and trial.

Defendant additionally argues he is prejudiced by the delay because the delay violates his speedy trial rights, as he has been in pretrial custody for over 30 months. Defendant has filed a separate motion on that issue. The Court will address Defendant's arguments regarding violation of his Speedy Trial rights in a separate Memorandum Opinion and Order after that issue is fully briefed.

For all the foregoing reasons, Defendant has not shown the belated disclosure of the telephone records resulted in material prejudice requiring the remedy he seeks – dismissal of the indictment. The Court finds that granting an eight-day continuance is the proper remedy and will

protect Defendant's due process rights. Accordingly, the Court finds that the belated disclosure does not constitute a *Brady* violation and will deny Defendant's request to dismiss the indictment under *Brady* and the Due Process Clause.

Finally, at the hearing, Defendant alternatively moved for suppression of all evidence of communications by telephone and text, including communications between Talamantes and the undercover officer. If a party fails to comply with Rule 16 discovery obligations, under Rule 16(d)(2), a court may grant a continuance, prohibit the party from introducing the undisclosed evidence, or enter any other just order under the circumstances. *See* Fed. R. Crim. P. 16(d)(2)(B)-(D). The Court finds that a continuance is the proper remedy under the circumstances and will deny Defendant's request to suppress all evidence of electronic communication. *Cf. Burke*, 571 F.3d at 1056 (noting that late disclosure by itself does not constitute *Brady* violation and that defendant "failed to present the trial court with any credible reason why the delayed disclosure of Mr. Corbett's plea agreement had resulted in prejudice requiring the remedy he sought-the exclusion of all testimony by the witness about whom impeachment evidence was withheld").

**IT IS THEREFORE ORDERED** that Defendant Oscar Moreno-Coronado's Motion to Dismiss the Indictment for Violation of *Brady v. Maryland* (**ECF No. 144**) is **DENIED**.

_____
**UNITED STATES DISTRICT JUDGE**